UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| ALLCO FINANCE LIMITED, OTTER ) <br> CREEK SOLAR LLC, and PLH ) <br> VINEYARD SKY LLC, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ANTHONY ROISMAN, RILEY ALLEN, ) <br> and MARGARET CHENEY, in their official ) <br> capacities as commissioners of the Vermont ) <br> Public Utility Commission, ) <br> ) <br> Defendants. ) | Case No. 2:20-cv-103 |

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT**
(Doc. 60)

Plaintiffs Allco Finance Limited ("Allco"), Otter Creek Solar LLC ("Otter Creek"), and PLH Vineyard Sky LLC ("PLH") bring this action against Defendants Anthony Roisman, Riley Allen, and Margaret Cheney, each in their official capacities as commissioners of the Vermont Public Utility Commission ("VPUC"), alleging VPUC's implementation of Vermont's Standard Offer Program for purchasing renewable energy, 30 V.S.A. § 8005a, violates the United States Constitution's Supremacy Clause because it conflicts with the implementing regulations of section 210 of the Public Utility Regulatory Policies Act of 1978 ("PURPA"), 16 U.S.C. §§ 2601-45.

Pending before the court is Defendants' motion to dismiss the Second Amended Complaint ("SAC"). Defendants argue that the SAC must be dismissed because (1) Defendants have sovereign immunity under the Eleventh Amendment; (2) Plaintiffs fail to state a preemption claim; (3) Plaintiffs do not comply with Fed. R. Civ. P. 8; (4) Plaintiffs do not satisfy statutory requirements for a private right of action; (5) Plaintiffs lack standing; and (6) Plaintiffs failed to exhaust their administrative remedies.

Plaintiffs are represented by Thomas M. Melone, Esq. Defendants are represented by Assistant Vermont Attorney General David R. McLean.

## I. Procedural Background.

On July 21, 2020, Plaintiffs filed their initial Complaint. On September 24, 2020, Plaintiffs filed a motion for a preliminary injunction. After a hearing, the court issued an Opinion and Order on October 20, 2020 denying the preliminary injunction and ordering Plaintiffs to show cause as to why their Complaint should not be dismissed for lack of subject-matter jurisdiction. (Doc. 19.) On November 9, 2020, Plaintiffs filed a response to the court's show cause order and on November 12, 2020 filed their First Amended Complaint ("FAC").

On January 29, 2021, Defendants moved to dismiss the FAC. The court held a hearing on July 2, 2021, at which time it took Defendants' motion to dismiss the FAC under advisement. In a September 16, 2021 Entry Order, the court *sua sponte* struck the FAC and ordered a more definite statement because the FAC was "replete with information that ha[d] no relevance" and improperly "interw[o]ve factual allegations with legal arguments." (Doc. 48 at 3.) As the court observed,

> At this juncture, it would be a waste of party and judicial time and resources to issue another order to show cause. It will assist the court and the parties if the operative complaint contains a more definite statement of the facts on which Plaintiffs base their claim and if the essential elements of their claim, as opposed to legal argument regarding them, are readily discernible. It will also assist the court if extraneous information is removed from the Complaint.

*Id.* at 3-4. The court denied Defendants' motion to dismiss the FAC as moot.

Plaintiffs filed their SAC on October 12, 2021. On December 15, 2021, Defendants filed a timely motion to dismiss the SAC. Pursuant to a stipulated briefing schedule, Plaintiffs filed a response in opposition on February 3, 2022, and Defendants replied on March 15, 2022, at which time the court took the pending motion under advisement.

Plaintiffs' SAC, like their initial Complaint and FAC, is a lengthy document that melds legal argument and historical background, provides legal citations and analysis,

2

and addresses key factual issues through conclusory statements of law. However, in light of the proceedings to date and Plaintiffs' efforts to reduce the amount of unnecessary and improper material in their pleading, it would not further the "just, speedy, and inexpensive determination of [this] action[,]" Fed. R. Civ. P. 1, to dismiss Plaintiffs' SAC for violating the pleading standards of Fed. R. Civ. P. 8. Defendants' motion seeking dismissal on that basis is therefore DENIED.

## II.     Allegations in the SAC.

Plaintiffs allege that they are "qualifying small power producers" ("QSPPs") who own and/or operate solar power production facilities in Vermont which they assert are "qualifying small power production facilities," ("QFs") as those terms are defined by PURPA. These allegations are legal conclusions which the court need not accept as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Plaintiffs challenge certain features of Vermont's Standard Offer Program, 30 V.S.A. § 8005a, and name VPUC's commissioners as Defendants. The Standard Offer Program was enacted in 2009 and "purport[s] to implement" PURPA and the Federal Energy Regulatory Commission's ("FERC") regulations, which "impos[e] an obligation on electric utilities . . . to purchase electricity at wholesale from certain [QSPPs] that own or operate [QFs.]" (Doc. 52 at 1-2, ¶ 1.) The Standard Offer Program "require[s] electric utilities in the state to enter into long-term, fixed-price contracts with QSPPs for energy from [QFs] through an agent, VEPP Inc.[,] a state-created corporation." *Id.* at 3, ¶ 6. "In the case of solar energy facilities, the contract term [is] twenty-five years." *Id.* at 17, ¶ 46.

The initial capacity limit of the Standard Offer Program was 50 megawatts, which was expanded in 2012 to 127.5 megawatts "for certain QFs, and was uncapped for other QFs." *Id.* at 17, ¶ 48. While VPUC initially set the price paid for electricity, the Vermont Legislature amended the Standard Offer Program in 2012 to require VPUC to "use a market-based mechanism, such as a reverse auction or other procurement tool, . . . if it first finds that use of the mechanism is consistent with: (A) applicable federal law; and (B) the goal of timely development at the lowest feasible cost." 8 V.S.A. 8005a(f)(1). In a

March 1, 2013 order, the VPUC "adopted a market-based mechanism under which renewable energy QFs [] compete against each other for the contracts[.]" (Doc. 52 at 18, ¶ 50.) The market-based mechanism only applies to QFs which are subject to the capacity limit.

Plaintiffs assert that, when they sought Standard Offer contracts, two aspects of the Standard Offer Program as implemented by VPUC were "in conflict" with PURPA and "governing federal regulations concerning PURPA[.]" *Id.* at 5, ¶ 10.

> First, the [VPUC] Orders significantly limit the utilities' obligation to purchase electricity from QSPPs for energy from qualifying facilities. They place an overall cap on the amount of electricity each utility is required to buy in respect of qualifying facilities. For example, under the Orders, VEPP is required to purchase a very limited amount in total in respect of qualifying facilities that generate electricity using solar technology. What capacity is available for energy from those solar facilities varies from year-to-year based upon what capacity remains after the VPUC provides preference to non-solar technologies. As a result, the VPUC's program is oversubscribed. Federal law, which was enacted specifically to encourage the development of renewable energy generation, does not permit a state commission to limit utilities' purchase obligations in this manner. . . .
>
> Second, the Orders provide for a purchase price that is different than the utilities' avoided costs. For each year of the Standard Offer program the VPUC made a determination of what the long run avoid cost rate ("LRAC") was at that time. In the case of solar electric qualifying facilities, the VPUC-determined LRAC rate for solar for a 25-year contract was 25.7 cents per kwh for 2013 and 2014, 15.5 cents per kwh for 2015 and 13.0 cents per kwh for 2016-2020. Instead of using the VPUC-determined LRAC rate, the VPUC's method for deciding which of the projects should receive a contract from VEPP is to hold what is effectively a reverse auction, so that, over time, the price offered (in each of the multiple categories of qualifying facilities) will be the lowest price at which QSPPs in such QF category are willing to sell their electricity. That is inconsistent with federal law, which provides that the price of a contract entered into under PURPA must be based upon the utility's avoided costs, not the qualifying facility's production costs.

*Id.* at 4-5, ¶¶ 7-8 (emphasis omitted).

Plaintiffs allege that the Standard Offer Program conflicted with PURPA regulations "in effect prior to December 30, 2020, which are the regulations that govern

all events herein." *Id.* at 1, ¶ 1 n.1. Plaintiffs do not allege that the Standard Offer Program conflicts with FERC's revised regulations, which became effective December 30, 2020, and assert that the new regulations, "if they survive legal challenges, are prospective only and do not affect Plaintiffs' rights complained of herein." *Id.*

Plaintiffs allege that "in most years since its inception" they have submitted bids for QFs under the Standard Offer Program or "would have submitted a bid if the Standard Offer [P]rogram complied with federal law" resulting in Plaintiffs suffering an injury-in-fact. *Id.* at 20, ¶ 58. They further assert that "[i]n each year of the Standard Offer [P]rogram, the Defendants' caps and reverse auction pricing mechanism got in the way of the contract Plaintiffs sought—a long-term 25-year contract at the rate determined by the VPUC as being the avoided-cost rate for the specific Standard Offer year." (Doc. 52 at 20, ¶ 59.) "But for the VPUC's caps and reverse auction pricing mechanism, Plaintiffs would have been able to secure a Standard Offer contract at the VPUC's determined avoided cost rate in all years in which they submitted bids." *Id.* at 20, ¶ 60. The "unlawful implementation of PURPA substantially increases the potential for loss of Plaintiffs' . . . opportunity to enter into a contract with VEPP on terms consistent with federal law." *Id.* at 23, ¶¶ 66-67.

On November 4, 2016, Plaintiffs challenged the Standard Offer Program's caps and market-based pricing mechanism in a petition to FERC for enforcement of section 210(h) of PURPA against the VPUC ("FERC Petition"). On January 3, 2017, FERC declined to initiate an enforcement action under PURPA and stated: "Our decision not to initiate an enforcement action means that Petitioners may themselves bring an enforcement action against the Vermont Commission in the appropriate court." *Id.* at 19, ¶ 55 (quoting Notice of Intent Not to Act, *In re Otter Creek Solar LLC et al.*, 158 FERC ¶ 61,001 (Jan. 3, 2017)).

Plaintiffs bring a single cause of action under the Supremacy Clause asserting that the "VPUC's administration of the Standard Offer [P]rogram conflicts with federal regulations under PURPA and [is] an obstacle to the achievement of Congress' policy in enacting PURPA" and therefore the caps and market-based pricing mechanism are

5

"preempted by federal law and violate the Supremacy Clause[.]" *Id.* at 27, ¶ 86. They seek a declaratory judgment to this effect as well as an injunction prohibiting Defendants from "continuing to apply" the caps and market-based pricing mechanism. *Id.* at 30, ¶ d. Plaintiffs assert that with "a favorable ruling from this Court" they "will be able to seek specific contracts in Vermont state court and a correction in the rate of existing contracts as an as-applied challenge under section 210(g) of PURPA." (Doc. 52 at 28, ¶¶ 90-91.)

### III. Conclusions of Law & Analysis.

#### A. Standard of Review.

"Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper when the district court lacks the statutory or constitutional power to adjudicate it." *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (quoting *Ford v. D.C. 37 Union Loc. 1549*, 579 F.3d 187, 188 (2d Cir. 2009)). "[T]he party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Id.* "[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings." *Id.* (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)).

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* (citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that Plaintiffs will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

"Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises . . . an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000). "[M]otions to dismiss a plaintiff's complaint under Rule 12(b)(6) on the basis of an affirmative defense will generally face a difficult road" because the court must still "accept as true the material facts alleged in the complaint and draw all reasonable inferences in plaintiffs' favor." *Garcia v. Does*, 779 F.3d 84, 97 (2d Cir. 2015) (alterations adopted) (internal quotation marks and citations omitted).

### B. Whether the SAC Must Be Dismissed Because of Defendants' Eleventh Amendment Immunity.

Jurisdictional and other threshold arguments "ordinarily must precede merits determinations[,]" although there is no "mandatory sequencing" of threshold issues. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (internal quotation marks and citations omitted). "[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits. Dismissal short of reaching the merits means that the court will not proceed at all to an adjudication of the cause." *Id.* (internal quotation marks and citations omitted). "Jurisdiction is vital only if

7

the court proposes to issue a judgment on the merits." *Id.* (internal quotation marks, alteration, and citations omitted).

"[T]he Eleventh Amendment goes to the jurisdiction of the federal court, as opposed to the underlying liability of the State or state entity." *Nat'l Ass'n for Advancement of Colored People v. Merrill*, 939 F.3d 470, 475 (2d Cir. 2019) (internal quotation marks and citations omitted). As a "jurisdictional restriction[,]" Eleventh Amendment immunity "should be given priority" and addressed as a threshold issue, *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778-79 (2000), especially where, as here, a state defendant has unconditionally asserted it. *See Hale v. Mann*, 219 F.3d 61, 67 (2d Cir. 2000) ("Before discussing [the merits], we must address [defendant's] contention that it is entitled to Eleventh Amendment immunity from suit . . . . This *assertion* of sovereign immunity [under the Eleventh Amendment] implicates jurisdictional concerns.") (emphasis supplied) (collecting cases)).[1]

While Eleventh Amendment immunity is "jurisdictional[,]" it "is not coextensive with the limitations on judicial power in Article III[,]" *Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998), and therefore whether it is properly raised "under [Fed. R. Civ. P.] 12(b)(1) or 12(b)(6) is an unsettled question of law[.]" *Robinson, v. Balanetre*, 2022 WL 1173365, at *3 (S.D.N.Y. Apr. 20, 2022) (citing *Ripa v. Stony Brook Univ.*, 808 F. App'x 50, 50 n.1 (2d Cir. 2020)).[2] The distinction can be "significant" because courts "must accept all factual allegations in a complaint as true when adjudicating a motion to dismiss

---

[1] *See also United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) ("If a State defendant had asserted [an Eleventh Amendment defense], addressing the threshold jurisdictional matter would be obligatory."); *Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 477 (6th Cir. 2006) ("[U]nder any circumstances in which the State (or the United States) declines to raise sovereign immunity as a threshold defense, we conclude that the federal courts have discretion to address the sovereign-immunity defense and the merits in whichever order they prefer.").

[2] "Whether Eleventh Amendment immunity 'constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense' has not yet been decided by the Supreme Court or [Second Circuit]." *Ripa v. Stony Brook Univ.*, 808 F. App'x 50, 50 n.1 (2d Cir. 2020) (quoting *Carver v. Nassau Cnty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013)), *cert. denied*, 141 S. Ct. 1070 (2021), *reh'g denied*, 141 S. Ct. 1530 (2021).

under Fed. R. Civ. P. 12(b)(6)," but "in adjudicating a motion to dismiss for lack of subject-matter jurisdiction, a district court may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007) (citations omitted).

In this case, the "distinction has no practical effect" because the court has considered "only the pleadings and the relevant state and federal law and has drawn all inferences in Plaintiff[s]'[] favor." *Harrison v. New York*, 95 F. Supp. 3d 293, 313 n.6 (E.D.N.Y. 2015) (quoting *Tiraco v. N.Y. State Bd. of Elections*, 963 F. Supp. 2d 184, 191 n.6 (E.D.N.Y. 2013)); *see also Rowland*, 494 F.3d at 77 n.4 ("[W]e need not decide whether the District Court correctly reviewed defendants' motion to dismiss on sovereign immunity grounds as a challenge to the District Court's subject-matter jurisdiction . . . because . . . even assuming *arguendo* the version of the facts urged by defendants, they are not entitled to sovereign immunity with respect to the instant claims."). "[I]n accordance with the approach taken by other district courts within this Circuit," the court will apply the "stricter standard" under Rule 12(b)(6) in assessing Defendants' Eleventh Amendment immunity arguments. *JTE Enters., Inc. v. Cuomo*, 2 F. Supp. 3d 333, 339 (E.D.N.Y. 2014) (collecting cases).

Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although by its terms the Amendment applies only to suits against a State by citizens of another State," the Supreme Court has consistently "extended the Amendment's applicability to suits by citizens against their own States." *Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) (collecting cases). "Stated as simply as possible, the Eleventh Amendment means that, as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under

9

Section 5 of the Fourteenth Amendment." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citations omitted) (alterations adopted).

"The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). This includes state officers in their official capacity. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). The party "invoking the Eleventh Amendment bears the burden of demonstrating that it qualifies as an arm of the state entitled to share in its immunity." *Woods*, 466 F.3d at 237.

The SAC names Defendants only in their official capacities as officers of VPUC, a Vermont state agency. Plaintiffs nonetheless argue the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), applies and forecloses Eleventh Amendment immunity for Defendants. "The doctrine of *Ex Parte Young* is a limited exception to the general principle of sovereign immunity and allows 'a suit [for injunctive or declaratory relief] challenging the constitutionality of a state official's actions in enforcing state law' under the theory that such a suit is not 'one against the State,' and therefore not barred by the Eleventh Amendment." *CSX Transp., Inc. v. New York State Off. of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002) (quoting *Ex Parte Young*, 209 U.S. at 154). "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an *ongoing violation of federal law* and seeks relief properly characterized as *prospective*." *Id.* (emphasis supplied) (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002)).

Plaintiffs argue there is an ongoing violation of federal law because "Defendants used and continue to use their regulatory control over VEPP to prevent VEPP from executing contracts to which Plaintiffs are still entitled[.]" (Doc. 63 at 5.) It is undisputed,

however, that Plaintiffs allege they are entitled to "seek specific contracts . . . and a correction in the rate of existing contracts[,]" only under federal regulations that are no longer in effect. (Doc. 52 at 28, ¶ 90.) Plaintiffs concede that the current federal regulations "do not affect Plaintiffs' rights complained of [in the SAC]." Doc. 52 at 1, ¶ 1 n.1; *see also* Doc. 63 at 5 ("FERC's new PURPA rules . . . are not applicable or relevant to the Plaintiffs' complaint or the [allegedly] prospective relief Plaintiffs seek.").[3]

Plaintiffs thus tacitly acknowledge they seek to rectify past harm by obtaining new contracts or "corrections" to existing ones under past regulations; they identify no ongoing violation of federal law. (Doc. 52 at 28-29, ¶¶ 90-91) (alleging that the "relief requested" would allow "state courts in an as-applied challenge [to] enforce the *requirements of federal law that were in force at the relevant time* and, in the case of existing contracts, adjust the rate upward to what the Plaintiffs *were entitled to* and provide contracts that *would have been issued* but for the illegal features of the Standard Offer") (emphasis supplied). Because the federal regulations at issue in the SAC have been superseded, this case is readily distinguishable from *Winding Creek Solar LLC v. Peevey*, 293 F. Supp. 3d 980 (N.D. Cal. 2017), *aff'd sub nom. Winding Creek Solar LLC v. Peterman*, 932 F.3d 861 (9th Cir. 2019), where the relief sought was prospective and addressed an ongoing violation of federal law.

Requests for injunctive relief to enforce regulations no longer in effect must be denied as moot. *See Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) ("[T]he regulation at issue is no longer in force. . . . Thus the issue of the validity of the old regulation is moot, for this case has 'lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of law.'")

---

[3] FERC's new regulations "permit a state the flexibility" to use "competitive solicitation[]" pricing mechanisms. *See* Qualifying Facility Rates and Requirements Implementation Issues Under the Public Utility Regulatory Policies Act of 1978, 85 FR 54638-01, 54690, ¶ 411 (September 2, 2020). In their opposition, Plaintiffs argue that Vermont's Standard Offer Program "remain[s] unlawful" even if "the new FERC regulations were applicable (which they are not)[.]" (Doc. 63 at 6.) Plaintiffs may not amend the SAC through their brief to challenge FERC's new regulations. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (holding a "party may not amend [a] pleading through statements in briefs") (citation omitted).

11

(quoting *Hall v. Beals*, 396 U.S. 45, 48 (1969) (per curiam)); *New York v. Raimondo*, 2021 WL 1339397, at *2 (S.D.N.Y. Apr. 9, 2021) ("It is a 'perfectly uncontroversial and well-settled principle of law that when an agency has rescinded and replaced a challenged regulation, litigation over the legality of the original regulation becomes moot.'") (alteration adopted) (quoting *Akiachak Native Cmty. v. U.S. Dep't of the Interior*, 827 F.3d 100, 113–14 (D.C. Cir. 2016) (collecting cases)). As the "amendments" to FERC's regulations have "rendered moot" the "specific type of injunctive relief approved in *Ex parte Young*," there is no "continuing violation of federal law [alleged], and therefore no occasion to issue an injunction." *Green v. Mansour*, 474 U.S. 64, 69, 73 (1985).

Plaintiffs contend that, even if injunctive relief is not available, they may still seek declaratory relief which they can then, in turn, use to their advantage in a state court "as-applied challenge under section 210(g) of PURPA." (Doc. 52 at 28, ¶ 90.) While under *Ex Parte Young* a court may grant "a declaration of the *past*, as well as the *future*, ineffectiveness of [a regulatory] action, so that the past financial liability of private parties may be affected[,]" it may only do so because, "[i]nsofar as the exposure of the State is concerned, the prayer for declaratory relief adds nothing to the prayer for injunction." *Verizon*, 535 U.S. at 646 (emphasis in original). For that reason, the Supreme Court has "made clear that a request for a declaratory judgment as to a past violation cannot *itself* establish a case or controversy to avoid mootness" under *Ex Parte Young*. *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 394-95 (2d Cir. 2022) (emphasis supplied) (citing *Mansour*, 474 U.S. at 73-74; *McGinty v. New York*, 251 F.3d 84, 101 (2d Cir. 2001)).

In *Green v. Mansour*, after determining an injunction was not warranted, the Supreme Court explained:

> There is a dispute about the lawfulness of respondent's past actions, but the Eleventh Amendment would prohibit the award of money damages or restitution if that dispute were resolved in favor of petitioners. We think that the award of a declaratory judgment in this situation would be useful in resolving the dispute over the past lawfulness of respondent's action only if it might be offered in state-court proceedings as res judicata on the issue of liability, leaving to the state courts only a form of accounting proceeding

> whereby damages or restitution would be computed. But the issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment.

474 U.S. at 73. Accordingly, "'[a] declaratory judgment is not available when the result would be a partial "end run" around' the Eleventh Amendment's bar on retrospective awards of monetary relief." *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000) (quoting *Mansour*, 474 U.S. at 73).

The declaratory relief Plaintiffs seek in this case is "unavailable in federal court" because "[a]ny declaration could say no more than that [Defendants] had violated federal law in the past." *Ward*, 207 F.3d at 120; *cf. Healey*, 28 F.4th at 394-95 ("[B]ecause the Attorney General's investigation is over, any declaratory judgment opining on the legality of that investigation would be 'entirely retrospective because the state is no longer allegedly violating federal law.'") (alterations adopted) (quoting *Ward*, 207 F.3d at 119). Such relief is neither "necessary to vindicate the federal interest in assuring the supremacy of that law" nor "designed to end a continuing violation of federal law" but is, rather, an effort to protect "compensatory . . . interests[,]" which are "insufficient to overcome the dictates of the Eleventh Amendment." *Mansour*, 474 U.S. at 68.[4]

Because the SAC does not plausibly allege "an ongoing violation of federal law" or "seek[] relief properly characterized as prospective[,]" *Verizon*, 535 U.S. at 645, Plaintiffs' claims are barred by the Eleventh Amendment and Defendants' motion to dismiss the SAC must be GRANTED.

### C. Whether Plaintiffs Should Be Granted Leave to Amend.

Plaintiffs request leave to amend, which Defendants oppose. The court must "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).

---

[4] Plaintiffs argue that "the Eleventh Amendment is not implicated" because VEPP, not the state, "would make payments[.]" (Doc. 63 at 4.) This is pure speculation. Plaintiffs admit that VEPP is "a state-created corporation" (Doc. 52 at 3, ¶ 6); thus, "the money in question would [not] come *directly* from consumers[.]" *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 479 (1st Cir. 2009) (emphasis supplied).

13

However, "[a] district court has discretion to deny leave for good reason[.]" *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party[.]" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)).

Plaintiffs have been on notice of deficiencies in their pleadings since October 20, 2020, when the court ordered them to show cause why their initial Complaint should not be dismissed. Plaintiffs have twice been granted leave to amend their claims and were ordered to make "readily discernible" "the facts on which Plaintiffs base their claim" and "the essential elements of their claim[.]" (Doc. 48 at 3-4.)

Because Plaintiffs have already had three opportunities to plead their claims and have failed to identify, as required by Local Rule 15(a), what they would do differently if given a fourth opportunity, their request for leave to amend is DENIED. *See Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003) ("Three bites at the apple is enough.") (internal quotation marks and citation omitted); *Exelis, Inc.*, 824 F.3d at 28-29 (finding no abuse of discretion in denial of leave to amend where plaintiff "received an opportunity to file a second amended complaint" which "failed to cure" "deficiencies" and plaintiff "did not proffer or describe a proposed new pleading to cure the deficiencies"); *Armstrong v. McAlpin*, 699 F.2d 79, 94 (2d Cir. 1983) (holding district court did not abuse its discretion in dismissing second amended complaint and refusing to allow "a fourth attempt to plead"); *see also Walsh v. Caliber Home Loans, Inc.*, 2021 WL 124684, at *1 (S.D.N.Y. Jan. 13, 2021) ("Failure to comply with the Local Rules is a sufficient ground to warrant denial of a motion.") (collecting cases).

Defendants also ask for the SAC to be dismissed with prejudice. "A dismissal for lack of jurisdiction without leave to amend is not the same thing as a dismissal with prejudice." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 445 (2d Cir. 2022) (internal

14

quotation marks omitted) (quoting *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019)). "[A] dismissal with prejudice is a ruling on the merits" and therefore a dismissal on threshold grounds "*must* be without prejudice rather than with prejudice[.]" *Id.* (emphasis in original) (internal quotation marks and citations omitted). The dismissal of Plaintiffs' SAC is therefore without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Doc. 60) is GRANTED WITHOUT PREJUDICE and Plaintiffs' request for leave to amend is DENIED.
SO ORDERED.

Dated at Burlington, in the District of Vermont, this 7th day of July, 2022.

Christina Reiss, District Judge
United States District Court